IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CHARLIE F. GRUBB, III, in his     )
capacity as Executor of the       )
Estate of Danielle J. Grubb,      )
                                  )
               Plaintiff,         )
                                  )
     v.                           )     1:13CV289
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social     )
Security,                         )
                                  )
               Defendant.         )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Danielle J. Grubb,[1] brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act. (See Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __")

---

[1] On March 18, 2014, Plaintiff's counsel filed a Motion to Substitute Party that requested the Court substitute Charlie F. Grubb, executor of Danielle Grubb's estate, as Plaintiff. (Docket Entry 12.) According to Plaintiff's counsel, Danielle Grubb died on December 20, 2013, and Charlie Grubb acts as the executor of the estate. (Id.; see also Docket Entry 12-1; Docket Entry 12-2.) The Court granted the Motion. (See Text Order dated April 20, 2014.) However, for ease of reference, this Opinion will still refer to Danielle Grubb as Plaintiff.

and the parties have filed cross-motions for judgment (Docket Entries 7, 10). For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff protectively applied for DIB, a period of disability, and SSI on June 17, 2010, alleging a disability onset date of September 16, 2005. (Tr. 170-71, 172-76.)[2] After denial of the applications initially (Tr. 137-41) and on reconsideration (Tr. 144-47), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 148-49). Plaintiff and her attorney appeared at the hearing. (Tr. 34-61.) The ALJ thereafter determined that Plaintiff did not qualify as disabled within the meaning of the Act (Tr. 29); further, the ALJ found that as a result of Plaintiff's first application, res judicata barred reconsideration of her disability during the time of the first decision, so the ALJ only considered the period from September 16, 2009 (the day after the first ALJ's decision), to the date of the instant decision (Tr. 19). The Appeals Council subsequently denied Plaintiff's request for review and did not consider the new

---

[2] Plaintiff's instant application actually represents a second application as she previously attempted to obtain benefits. See Grubb v. Colvin, No. 1:12cv174, 2014 WL 2117033, at *1 (M.D.N.C. May 21, 2014) (unpublished). In her previous application, Defendant denied Plaintiff's first application, and this Court (per United States District Judge Thomas D. Schroeder) affirmed. Id.

evidence provided by Plaintiff as it related to a period after the ALJ's decision. (Tr. 1-4.)

In rendering that disability ruling, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since September 16, 2009 . . . .
>
> 3. [Plaintiff] has the following severe impairments: chronic asthma with asthmatic bronchitis; tachycardia; and obesity . . . .
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she has postural, environmental[,] and mental limitations. [Plaintiff] has postural limitations, such that she can only occasionally climb ramps, climb stairs, stoop, bend, kneel, or crouch; and she can never climb ladders, ropes[,] or scaffolds. She has environmental limitations, such that she must avoid concentrated exposure to wetness, humidity, and extremes of cold and heat. She must also avoid concentrated exposure to operation control of moving machinery and unprotected heights. Due to mild fatigue associated with a combination of [Plaintiff's] severe impairments, she may not work at a production rate or pace.

(Tr. 21-23 (internal parenthetical citations removed).)

In light of the foregoing findings regarding residual functional capacity, the ALJ determined that Plaintiff could perform her past relevant work as a customer service representative. (Tr. 27.)  Accordingly, the ALJ ruled that Plaintiff did not have a disability, as defined by the Act, at any time from September 16, 2009, through the date last insured. (Tr. 29.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less

4

than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically

5

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]  "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

(4th Cir. 1999).[4]  A finding adverse to a claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')."  Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform "past relevant work" ("PRW"); if so, the claimant does not qualify as disabled.

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)."  Hines, 453 F.3d at 562-63.

Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## ASSIGNMENTS OF ERROR

Plaintiff lodges three assignments of error. First, Plaintiff contends that the ALJ erred by not giving Plaintiff's treating physician's opinion appropriate weight. (Docket Entry 8 at 4.) Second, Plaintiff argues that the ALJ erred by not properly considering the disability determinations of the North Carolina State Education Assistance Authority and the United States Department of Education. (Id. at 8.) Finally, Plaintiff asserts that the Appeals Council failed to consider the new evidence in her

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

request for review. (Id. at 10.) Defendant disagrees and urges the Court to affirm the ALJ's finding of no disability. (Docket Entry 11 at 12.)

## A. Treating Physician's Opinion

Plaintiff contends that the ALJ erred by not giving proper weight to the opinion of Plaintiff's treating physician, Dr. Herbon E. Fleming. (Docket Entry 8 at 4-8.) Plaintiff contests all three of the ALJ's reasons for discounting Dr. Fleming's opinion: (1) because Dr. Fleming provided his opinion "in the context of helping [Plaintiff] attempt to discharge student loans," (2) he failed to identify any "explicit functional or non-exertional limitations that would impede the claimant's return to work," (3) and his opinion "is not consistent with the other medical treatment records relating to [Plaintiff's] respiratory and pulmonary conditions." (Tr. 26.) Plaintiff's arguments lack merit.[7]

As to the first point, Plaintiff cites Pringle v. Astrue, No. 06-4112-JAR, 2007 WL 2909261 (D. Kan. Oct. 1, 2007) (unpublished),

---

[7] At the outset, Plaintiff cites the wrong standard for when an ALJ may discount a treating physician's opinion. (Docket Entry 8 at 4-5 (citing Foster v. Heckler, 780 F.2d 1125 (4th Cir. 1986) (requiring that persuasive contradictory evidence exist to discount the treating physician's testimony)).) Rather than the persuasive contradictory evidence standard, the regulations now in effect provide that controlling weight will be given to a treating physician's testimony when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(c)(2). See Pickett v. Colvin, No. 1:13CV161, 2014 WL 4748109, at *3 (M.D.N.C. Sept. 23, 2014) (unpublished) (Eagles, J.) ("[T]he 'persuasive contradictory evidence' test relied upon by [the plaintiff] is no longer the governing standard for evaluating the opinions of treating physicians.").

9

for support (Docket Entry 8 at 5); however, Plaintiff overstates the importance of Pringle. In Pringle, the ALJ discounted the treating physician's opinion on the basis that the physician provided the opinion for the sole purpose of obtaining disability benefits. Id. at 8. The district court found such action speculative and improper and remanded for further consideration. Id. at 9-10. Unlike Pringle, here, the ALJ did not speculate as to the opinion's purpose as Dr. Fleming had actually previously submitted a physician's certification of disability for Plaintiff's loan discharge application. (Tr. 747-50.) Furthermore, unlike in Pringle, the ALJ had alternative and valid reasons for discounting Dr. Fleming's opinion, as discussed below.

As to the second point, Plaintiff argues that Dr. Fleming provided non-exertional limitations. (Docket Entry 8 at 7.) In that regard, Plaintiff notes that Dr. Fleming stated "that even minimal exposure to noxious fumes such as perfumes or cleaning sprays will precipitate an asthma attack." (Id. (citing Tr. 492).) However, as Defendant points out, Dr. Fleming "failed to explain how Plaintiff's asthma attacks would affect her functioning or her ability to work, i.e., would it affect her ability to walk, would she need to rest or lay down after an attack, would she need to work in a clean environment." (Docket Entry 11 at 7-8.) Thus, the ALJ rightly discounted Dr. Fleming's incomplete opinion.

10

As to the third point, Plaintiff asserts that the ALJ did not provide any evidence of inconsistency by Dr. Fleming. (Docket Entry 8 at 4.) In her decision, the ALJ stated that "Dr. Fleming's opinion is not consistent with the other medical treatment records relating to the claimant's respiratory and pulmonary problems." (Tr. 26.) Although, the ALJ did not cite the particular records at issue, substantial evidence in the record supports the ALJ's conclusion. (See, e.g., Tr. 451-53 (revealing no issues with her heart or lungs), 495-96 (revealing appropriate breathing and oxygen levels), 689 (revealing no issues with her heart or lungs), 739 (same).)[8]

Finally, Plaintiff also adds that the ALJ did not address the opinion of Dr. Denny Tate, who, on January 2, 2009, opined that, "[Plaintiff] remains pretty much house bound due to respiratory illness. [Plaintiff] [h]as been instructed not to go out into crowds, not to go get a job because of her labile respiratory issue and recurrent infections." (Docket Entry 8 at 7 (citing Tr. 692) (emphasis removed).) Despite Plaintiff's complaint, the ALJ had no obligation to address this opinion as it occurred prior to the relevant time period. See Gunderson v. Astrue, 371 F. App'x 807, 809 (9th Cir. 2010) (finding no error for failure to consider

---

[8] In addition, the Court previously upheld another ALJ's determination that Dr. Fleming's opinion did not coincide with the medical records. See Grubb, 2014 WL 2117033, at *4.

11

evidence predating the onset date).  Moreover, any error in this context qualifies as harmless, as Dr. Tate's opinion echoes that of Dr. Fleming, and (as noted above) the ALJ properly found that record evidence did not support that opinion (see Tr. 26).

In sum, the Court should reject Plaintiff's first assignment of error.

### B.  Other Agency Findings

Plaintiff argues that the ALJ failed to properly evaluate the disability opinions from the United States Department of Education and the North Carolina State Education Assistance Authority. (Docket Entry 8 at 8-10.)  Social Security Regulation ("SSR") 06-03p requires the ALJ to consider and explain the consideration given to other agencies' determinations of disability.  Here, the ALJ accorded those agencies' decisions little weight because they "made [their] determinations under different laws and regulations, which are neither binding on nor directly relevant to the Social Security Administration's evaluation on disability."  (Tr. 26.)

Plaintiff objects to the ALJ's analysis of the other agencies' disability determinations and relies on Watson v. Astrue, No. 5:08-CV-553-FL, 2009 WL 2423967 (E.D.N.C. Aug. 6, 2009) (unpublished).  (Docket Entry 8 at 9-10.)  In that case, the ALJ failed to even mention the disability determination of another agency, so the magistrate judge recommended remand for further consideration.  Watson, 2009 WL 2423967, at *7.  Here, the ALJ

12

directly confronted the other agencies' determinations and explained her reasoning for according them little weight. (Tr. 26.) Thus, Watson does not aid Plaintiff. By explaining her reasoning, the ALJ complied with the requirements of SSR 06-03p, and the Court should dismiss Plaintiff's second assignment of error.

**C. New and Material Evidence**

Finally, Plaintiff asserts that the Appeals Council failed to consider the effect of new evidence in denying review of the ALJ's decision. The regulations provide: "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it related to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). "Evidence is new within the meaning of this section if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc) (internal citations omitted).

While on review with the Appeals Council, Plaintiff submitted new evidence for their consideration. (Tr. 2.) That evidence consisted of a Comprehensive Clinical Assessment from Triumph, LLC dated January 8, 2013. (Docket Entry 8-1.) According to the assessment, Plaintiff complained of - and the physician noted -

13

anxiety, crying spells, manic and depressive features, and hallucinations - among other things. (Id. at 1.) As a result of the assessment, the physician diagnosed Plaintiff with bipolar disorder, social phobia, neuropathy, type one diabetes, asthma, high cholesterol, high blood pressure, heart arrhythmia, and migraines. (Id. at 10.) Further, the physician noted that, according to Plaintiff, the symptoms of bipolar began in at least 2008 (id.), and the depression began around 1991 and continued to the day of the assessment (id. at 2). In denying review, the Appeals Council explained that the assessment related to a period after the date of the ALJ's decision, September 28, 2012, and that it did not affect the ALJ's determination of disability. (Tr. 2.) Pursuant to the regulations, 20 C.F.R. § 404.976(b)(1), the Appeals Council returned the evidence and informed Plaintiff of her right to file a new claim (Tr. 2).

Plaintiff asserts that the assessment constitutes new and material evidence and that the Appeals Council should have considered it. (Docket Entry 8 at 10-12.) In Plaintiff's view, the evidence qualifies as new because no other mental health evaluation or screening exists in the record. (Id. at 11.) Furthermore, she believes that the evidence qualifies as material as it could change the outcome of the claim. (Id.) In that regard, Plaintiff notes that the ALJ found Plaintiff's depression did not qualify as severe for various reasons. (Id. (citing Tr.

14

22)). However, some of her medical providers had previously contemplated whether she suffered from some form of mental illness. (See Tr. 326-27 (listing "anxiety" as a diagnosis), 366 (wondering whether Plaintiff's coughing stemmed from psychogenic cause), 692 (noting Plaintiff's depressive symptoms).) Plaintiff posits that the recent diagnosis of bipolar disorder may shed some light on the earlier issues and could affect a subsequent determination of her credibility and a formulation of her RFC. (Docket Entry 8 at 11-12.)

The Appeals Council did not err in rejecting Plaintiff's new evidence. Although the report arguably relates to the relevant period because it purports to diagnose Plaintiff with mental impairments dating back to 2008 (or earlier), the report does not qualify as material, because it would not likely change the outcome of Plaintiff's claims. Although Plaintiff presented at Triumph, LLC in January 2013 displaying symptoms of depression and bipolar disorder and claimed those symptoms began in at least 2008 (if not earlier) (see Docket Entry 8-1), the medical record from 2008 to the date of the ALJ's decision contains little to no evidence of these symptoms. Plaintiff claimed only "depression" on her Disability Report, and made no mention of manic or bipolar symptoms, hallucinations, or other psychotic symptoms. (Tr. 193.) Moreover, Plaintiff did not discuss any mental symptoms at the hearing before the ALJ. (Tr. 36-60.) Further, on one occasion in

15

early 2009 (prior to the relevant period in this case), Plaintiff reported symptoms of depression and both suicidal and homicidal ideation. (Tr. 692.) However, those symptoms abated within a few months on anti-depressant medication. (See Tr. 691.)

Aside from these references to symptoms, the record otherwise lacks any mention of Plaintiff's other newly diagnosed symptoms, i.e., auditory and visual hallucinations, hyper or rapid speech, flight of ideas, or racing thoughts. Significantly, none of the many physicians who examined Plaintiff from 2008 until the date of the ALJ's decision noted the existence of any such symptoms in their treatment records. Indeed, the foundation of the Triumph, LLC physician's retrospective clinical impression rests on Plaintiff's <u>subjective</u> report that her bipolar symptoms began in at least 2008. Such considerations undermine Plaintiff's request for relief on this ground. See <u>Clendening v. Astrue</u>, 2011 WL 1130448, *5 (N.D. Ohio 2011) (concluding that retrospective opinions require no deference where treating physician lacked first-hand knowledge of claimant's condition prior to relevant period), <u>aff'd</u>, 482 F. App'x 93 (6th Cir. 2012). In other words, absent objective evidence in the record corroborating the existence of such symptoms during the relevant period, the Triumph physician's retrospective diagnosis lacks materiality. See <u>Etok v. Apfel</u>, 152 F.3d 636, 640 (7th Cir. 1998) ("[A] retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the

16

eligible period."); accord Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996); Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996); Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995); Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457-62 (9th Cir. 1995); Evangelista v. Secretary of Health & Human Services, 826 F.2d 136, 140 (1st Cir. 1987); Lancaster v. Astrue, No. 1:07-cv-0044, 2009 WL 1851407, at *12 (M.D. Tenn. Jun. 29, 2009) (unpublished).

In sum, the Appeals Council did not err in rejecting Plaintiff's new evidence and the Court should deny relief on Plaintiff's third assignment of error.

## CONCLUSION

Plaintiff has failed to establish any basis to reverse the conclusions of the ALJ or the Appeals Council finding Plaintiff not disabled.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion to Reverse the Decision of the Commissioner (Docket Entry 7) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 6, 2015